Filed 6/22/22  P. v. Montoya CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TADEO EFREN MONTOYA,<br><br>    Defendant and Appellant. | F082410<br><br>(Super. Ct. No. CR-19-010444)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Tadeo Montoya drove a stolen truck while under the influence of methamphetamine.  He had a substantial amount of heroin and methamphetamine in the

---

[*]    Before Poochigian, Acting P. J., Franson, J. and Smith, J.

truck, as well as a loaded firearm. Montoya was convicted, among other offenses, of two counts of possessing a controlled substance while in possession of a loaded and operable firearm. Montoya claims there is insufficient evidence to supports the jury's finding that his firearm was operable. We disagree and affirm.

## STATEMENT OF THE CASE

Montoya was charged with transportation of heroin for sale (count 1; Health & Saf. Code, § 11352, subd. (a))[1]; possession of heroin for sale (count 2; § 11351); transportation of methamphetamine for sale (count 3; § 11379, subd. (a)); possession of methamphetamine for sale (count 4; § 11378); possession of heroin while possessing a firearm (count 5; § 11370.1, subd. (a)); possession of methamphetamine while possessing a firearm (count 6; 11370.1, subd. (a)); unauthorized use of a vehicle (count 7; Veh. Code, § 10851, subd. (a)); receiving a stolen vehicle (count 8; Pen. Code, § 496d, subd. (a)); and driving under the influence of a narcotic (count 9; Veh. Code, § 23152, subd. (f)). It was further alleged that Montoya was personally armed with a firearm (Pen. Code, §§ 1203.07, subd. (a)(2), 12022, subd. (a)(1)), possessed 14.25 grams or more of heroin (Pen. Code, § 1203.07, subd. (a)(2)), and possessed 57 grams or more of a substance containing methamphetamine (Pen. Code, § 1203.073, subd. (b)(2)).

During trial, the trial court dismissed count 8, and a jury found Montoya guilty of the remaining counts and allegations. The trial court sentenced Montoya to a total term of eight years eight months in prison.

## STATEMENT OF THE FACTS

On the evening of October 28, 2019, Highway Patrol Officer Matt Fowles observed a white Ford truck traveling southbound on Highway 99. The truck had

---

[1] All further statutory references are to the Health & Safety Code unless otherwise stated.

oversized tires and an unilluminated brake light, both Vehicle Code violations. Officer Fowles activated his lights and pulled the truck over.

Montoya, the sole occupant of the vehicle, was extremely fidgety and nervous as he reached into different locations inside the vehicle. When Officer Fowles spoke with Montoya, he observed signs indicating Montoya was intoxicated—his eyes were red and droopy, his speech slurred, and the odor of alcohol emitted from his body.

Officer Fowles instructed Montoya to exit the vehicle. While Montoya was doing so, Officer Fowles noticed the radio and parts of the dashboard were missing. The vehicle had a temporary California license plate registered to a Chevrolet, not a Ford. Montoya stated he had borrowed the truck from a friend and did not know who owned the vehicle. A registration check of the vehicle revealed that the truck was reported stolen the previous day. Montoya was placed under arrest, and a search revealed four cell phones and $1,066 on his person. Officers Faoud Mosleh and Edgardo Yepez arrived on the scene.

A search of the truck revealed a large bundle of heroin wrapped in plastic along with a black scale behind the driver's seat. A bag containing numerous rounds of .22 caliber ammunition and additional narcotics were also found behind the driver's seat.

A canvas bag on the back seat of the vehicle contained two cardboard boxes, both containing individually wrapped bundles of methamphetamine. A brown powdery substance in a clear plastic bag was also located on the back seat.

A fabric bag behind the passenger seat contained clothing and a Ruger revolver. The revolver had six rounds of .22 caliber ammunition in the cylinder. Officer Fowles examined the firearm and determined it to be operable and in working order. Officer Paul Stoeck from the drug task force was called to assist with the investigation.

Officers Mosleh and Yepez transported Montoya to the Highway Patrol Office, where Montoya was determined to be under the influence of a controlled narcotic

stimulant and narcotic analgesics. A subsequent blood sample determined Montoya was positive for methamphetamine.

Officer Stoeck booked the located evidence. One of the cellphones recovered belonged to Montoya. The cellphone had photos of packaged narcotics similar to those located in the truck. Packages of heroin found weighed a total of 3.73 pounds and 30 individually wrapped bundles of methamphetamine weighed approximately 1.96 pounds. The Department of Justice later confirmed the substances to be methamphetamine and heroin.

Officer Fowles spoke with the owner of the vehicle, who confirmed that he did not have a firearm in the vehicle, no one had permission to drive the vehicle, and he had all remotes and keys to the vehicle in his possession.

Nicholas Price, a firearms expert, explained the basic mechanism of a firearm. He inspected the .22 revolver recovered by Officer Fowles and completed a normal function test on the weapon, which involved pulling the trigger to make sure the cylinder rotated simultaneously, while the hammer went back to the firing pin. Price testified that he typically went to the firing range to fire live rounds to make sure a gun is operable. In this case, he did not do so because the single-action mechanism on the .22 revolver was broken, which could have caused a malfunction and blown up in his hand. Price nevertheless testified that he performed a physical inspection on the revolver and determined the firearm was completely operable and it would still fire.

At the conclusion of the prosecution evidence, defense counsel made a motion to dismiss counts 5 and 6, arguing that there was insufficient evidence that the firearm was "operable" within the meaning of section 11370.1. Defense counsel argued that, while Price used the word "operable" to describe the firearm, he also described it as being such a risk of misfire that he was unwilling to test fire it.

The trial court denied the motion, stating that the firearm had a firing pin and "looked like" it was operable; there were rounds of ammunition loaded in the firearm

4.

"suggestive" it was operable, and the fact that it was "dangerous to fire" was not synonymous with "it couldn't … fire successfully."

## DISCUSSION

Section 11370.1 prohibits unlawful possession of a controlled substance "while armed with a loaded, operable firearm." (§ 11370.1, subd. (a).) Montoya contends the evidence was insufficient to support that the firearm was "operable" within the meaning of the statute. Montoya argues that the fact that the gun, when found, was loaded is insufficient to find that it was operable and that it should have been test fired to determine if it was operable. We affirm the convictions.

In assessing a claim of insufficiency of the evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Substantial evidence encompasses circumstantial evidence and reasonable inferences based on that evidence. (*People v. Pierce* (1979) 24 Cal.3d 199, 210.) "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.) " ' "Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt." ' " (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)

Montoya argues the evidence that the firearm was loaded and extra rounds for the firearm found nearby was insufficient because a conviction based only on whether the

gun was loaded would render the term "operable" in the statute meaningless. He also contends that the testimony, that the gun "appeared" to be operable but was not test fired to prove it, was insufficient to prove the required "operable" standard.

We disagree with Montoya that the only evidence supporting the inference the firearm was operable was that it was loaded and extra rounds were found nearby when seized. Evidence at trial was that Officer Fowles, who had been a police officer for 14 years, was familiar with firearms as he testified that he carried a revolver while on duty, which he had to make sure was in working order. He examined the firearm found in Montoya's vehicle, pulled the hammer back and got the cylinder removed to remove the ammunition in the gun. Officer Fowles determined the found firearm seemed to be operable and in working order.

And Price, a firearm instructor for two counties and firearms expert with extensive experience examining firearms, completed a normal function test on the revolver, which involved pulling the trigger to make sure the cylinder rotated simultaneously, while the hammer went back to the firing pin. After doing so, Price determined the firearm to be completely operable despite the fact that double-action mechanism on the firearm was broken. Price testified that he typically goes to the range to fire live rounds to make sure a gun is operable, however,

> "[T]his gun here, I don't know if it's been broken or modified but the mechanism is actually broken .…[¶] The double-action mechanism is broken, so with every press of that trigger, the hammer will go back and drop, causing the firing pin to strike a primer. But the cylinder will not rotate, so you have to manually change the cylinder, almost like a pump shotgun. You fire one round, rotate the cylinder, and fire another round."

When asked if the firearm was still able to fire, Price said, "Absolutely. We weren't able to take it to the range because if that bullet cylinder is misaligned with the bullet, it could cause a malfunction and blow up in your hand. So it's too dangerous for our personnel to test fire that weapon, that's why I did a physical inspection of the gun." While Price later

6.

clarified, after visually examining the firearm again at trial, that the revolver was a "single-action" not "double-action" revolver, that distinction did not matter in his assessment that the revolver at issue was still an operable firearm.

We disagree with Montoya's assertion that the prosecution had to "test-fire" the firearm to determine whether it was operable. While a test-fire of the firearm may have produced the best evidence of its operability, the jury's conclusion that the firearm was operable based on the evidence before it was logical and reasonable. We agree with the trial court that a firearm "dangerous to fire" was not synonymous with a firearm that "couldn't … fire successfully."

In view of the foregoing evidence, we conclude the jury could reasonably have inferred that the firearm was operable, and reject Montoya's claim to the contrary.

## DISPOSITION

The judgment is affirmed.